Darlene MORRISON f/k/a Darlene Junge, Appellant,

v.

CENTURY ENGINEERING, Fireman's Fund Insurance Co. and Employer's Insurance of Wausau, Appellees.

No. 87–934.

Supreme Court of Iowa.

Jan. 25, 1989.

Robert R. Rush and Matthew J. Nagle of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellant.

John Bickel and Diane Kutzko of Shuttleworth & Ingersoll, Cedar Rapids, for appellee Century Engineering and Employer's Ins. of Wausau.

Steven Udelhofen of Jones, Hoffmann & Huber, Des Moines, for appellee Fireman's Fund Ins. Co.

Thomas J. Miller, Atty. Gen., and Craig Kelinson, Sp. Asst. Atty. Gen., for amicus curiae Iowa Indus. Com'r.

Marvin E. Duckworth of Hopkins & Huebner, P.C., Des Moines, for amicus curiae Iowa Ins. Institute.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

We granted further review in this workers' compensation proceeding to consider the claimant's assertion that her attorney must be allowed to be present when the employer's counsel interviewed the claimant's treating physician. Because we find a workers' compensation claimant has no such right, and find no error on claimant's other assignments, we affirm the judgment of the district court. So doing we vacate a court of appeals decision which was based on a contrary view.

The claimant Darlene Morrison became employed by Century Engineering in 1977 and in 1978 was assigned to operate a spot welding machine. She operated the machine, also called a stomper, with her right foot while necessarily placing her weight on her left foot.

In 1975 and 1976, prior to her employment by Century, Darlene had injured her left foot. A few months after being assigned to the stomper, pain developed in her left foot and Darlene sought medical treatment. Surgery was performed on the left foot in May 1978. Complications developed and persisted. Darlene returned to work but continuing foot problems resulted in more surgery in 1979. She again returned to work only to experience more pain. A third operation was performed in 1980. The same pattern was again repeated and there was more surgery in 1981. Before she was allowed to return to work once more she was laid off. Since then she has found other employment. She had further surgery on her foot in 1984. There was evidence that she had a cavus foot, which is an unusually high arch, and that she is prone to form callouses.

Darlene sought compensation for her problems beginning in 1979. There were a number of proceedings and decisions, the latest in response to Darlene's review-reopening application. It resulted in a determination by the industrial commissioner that Darlene's 1980 injury was not compen-

sable. Darlene sought judicial review and the district court affirmed the commissioner.

I. The bench and bar perhaps become weary of our countless repetitions of the cardinal principle for appeals of this kind. The principle may be too often repeated, but it cannot be overemphasized. A court's role on judicial review of administrative proceedings is closely and strictly circumscribed. Public interest demands that judicial hands must be kept off administrative judgment calls. The district court's role, and our own, is limited by Iowa Code section 17A.19 (1987).

The first question is whether the district court correctly applied the law. *Mercy Health Center v. State Health Facilities Council,* 360 N.W.2d 808, 811 (Iowa 1985). In order to succeed in challenging agency action the petitioner must demonstrate prejudice to substantial rights *and* the prejudice must arise from agency action which falls within one or more of the grounds enumerated in section 17A.19(8). *Id.* We must affirm the agency on its finding of facts unless the findings are unsupported by substantial evidence. *Dillinger v. City of Sioux City,* 368 N.W.2d 176, 182 (Iowa 1985).

II. The workers' compensation Act provides for the free flow of information regarding a worker's physical or mental condition relative to a compensation claim. To facilitate that flow the Act provides that an applicant waives any privilege regarding the information.[1] Darlene's first assignment of error asserts that her attorney, Robert Rush, had a right to be present when the employer's attorneys interviewed Dr. Albert R. Coates, her treating physician.

After deposing Dr. Coates, defendant's attorneys sought a private interview with him. Rush, as Darlene's attorney, requested Dr. Coates not to undertake the private interview unless he, Rush, was present. Defendants objected to this and sought an order permitting their lawyers to conduct private, ex parte, conversations. The deputy ruled that Darlene waived any privilege of confidentiality by filing her petition for workers' compensation benefits and that defendants' attorneys could meet privately with Dr. Coates. The deputy also ruled that it was a violation of Iowa Code section 85.27 for Darlene to instruct Dr. Coates not to talk with defendants' counsel. The industrial commissioner affirmed this finding and so did the district court.

In challenging this holding Darlene relies on *Roosevelt Hotel Limited Partnership v. Sweeney,* 394 N.W.2d 353 (Iowa 1986). *Roosevelt* dealt with Iowa Code section 622.10.[2] We held that a plaintiff in a personal injury action could not be compelled to waive the physician-patient privilege so as to allow defendant's counsel to communicate privately with plaintiff's treating physician. *Roosevelt,* 394 N.W.2d at 355. We listed a number of reasons in support of our holding. First, our discovery rules do not provide for such a procedure as informal, ex parte interviews. *Id.* at 357. Secondly, we were troubled with the possibility of inadvertent wrongful disclosure of confidential matters. Perhaps our main concern was the possibility of disclosure of confidential material beyond the scope of the claim being litigated. *Id. See* Annotation, *Discovery: Right to Ex Parte Interview With Injured Party's Treating Physician,* 50 A.L.R.4th 714 (1986). We remain convinced of the appropriateness of the rule in *Roosevelt* but believe it should

1. Iowa Code section 85.27 provides in part:

Any employee, employer, or insurance carrier making or defending a claim for benefits agrees to the release of all information to which the employee, employer, or carrier has access concerning the employee's physical or mental condition relative to the claim and *further waives any privilege to the release of the information....* Any institution or person releasing the information to a party or the party's representative shall not be liable criminally or for civil damages by the release of information.
(Emphasis added.)

2. Section 622.10 establishes a general evidentiary privilege for confidential communications within various professional relationships, including that of physician-patient. The statute then provides that the privilege shall not apply in civil actions which involve the condition of the person who has been granted the privilege.

not be applied in workers' compensation cases.

The legislature clearly made the waiver provision in section 85.27 much broader than the one in section 622.10. This enlarged waiver is a part of a pattern to foster and encourage a ready access to the information necessary to speedily process workers' compensation claims. Informality is in everyone's interest because in workers' compensation cases, unlike ordinary cases, liability is almost never an issue. The only question is the condition of the injured worker. Because of the narrow scope of inquiry the possibility of revealing extraneous evidence is lower in workers' compensation cases than in ordinary ones.

The system is designed to be essentially nonadversarial. Whatever its faults, real or imagined, the system presupposes that all workers will benefit more if claims are processed routinely and paid quickly. Most of them are. It would be inimical to this system for the courts to force on the commissioner the rule which Darlene urges. The district court acted correctly in refusing to do so.

III. In separate assignments Darlene also assails two evidentiary rulings by the commissioner, one admitting and one excluding medical reports. The district court rejected both of these challenges and so do we.

The commissioner admitted a two-page letter signed by Dr. Coates but prepared by defense counsel some three months after their private meeting. The commissioner however refused to admit a medical report prepared by Dr. David E. Naden, who examined Darlene upon her request for an independent medical examination.

█ Strict rules of evidence are not to be applied in proceedings before the industrial commissioner. *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 462 (Iowa 1969). Acceptance or rejection of an expert's testimony is within the "peculiar province" of the industrial commissioner. *Id.* at 464. The commissioner has the duty to weigh the evidence and determine credibility of witnesses. *Id.* Whether the matters related in the letter authored by the defense counsel were Dr. Coates' actual conclusions is not a legal matter, but a factual matter, in which the commissioner is granted considerable deference.

We certainly do not encourage the preparation of medical reports by counsel for a litigant. But we cannot find an abuse of discretion in admitting the one signed by Dr. Coates. Its authorship is a matter which affected only its weight and credibility.

█ Dr. Naden's medical report was not served within the time prescribed by administrative rules then in effect. 500 Iowa Administrative Code 4.17, in effect at that time, provided that all doctors reports *shall* be served prior to the time of the prehearing conference. The examination was not scheduled until April 4, 1985. The prehearing conference was held on April 16, 1985. There is nothing in the prehearing order to allow service of Dr. Naden's report at a later date. Dr. Naden's report was not received by Darlene's counsel until July 8, 1985, and was served upon opposing counsel the same day.

█ Effective May 15, 1985, 500 Iowa Administrative Code 4.17[3] was changed to provide for service of medical reports within ten days of receipt. Darlene asks that it be applied retrospectively. *See State ex rel. Leas in Interest of O'Neal*, 303 N.W.2d 414, 419 (Iowa 1981) (procedural rule changes to be applied retrospectively). Even if it were to be applied retrospectively it cannot apply in this case. A procedural change cannot be applied to hearings held before the change of the rule.

There was no abuse of discretion in either evidentiary ruling.

IV. Finally, Darlene contends the denial of her benefits was not supported by substantial evidence. In rejecting Darlene's claim the commissioner and the district court focused on an appeal decision filed by the commissioner following a September 1980 hearing on Darlene's earlier application for benefits. Upon the present appli-

---

**3.** Subsequently changed to 343 Iowa Administrative Code 4.17.

cation both the commissioner and the court determined that the earlier decision found no permanent disability resulted from the work injury.

Darlene vigorously disputes that this was in fact the earlier finding, contending her permanency rating was not an issue in the earlier proceeding, and could not have been because her condition had not been sufficiently stabilized for assigning one.

The earlier appeal decision clearly found no permanent partial disability. And it is clear that the parties did litigate the issue. The matter then was, as both the commissioner and district court held, res judicata. Darlene, in the present review-reopening proceeding, thus had "the burden of establishing by a preponderance of the evidence that [she] suffered an impairment or lessening of earning capacity as a proximate result of [her] original injury, subsequent to the date of the award or agreement for compensation under review, which [entitled her] to additional compensation." *Deaver*, 70 N.W.2d at 457.

■ The commissioner found that Darlene did not show any new or changed condition proximately related to her prior work injury. He also found that her continuing foot problems stemmed from her congenital foot defects, not work aggravation of those congenital defects. These findings are supported by substantial evidence.

We have not overlooked an additional assignment of error in which Darlene challenges a discretionary ruling by the commissioner denying her motion for continuance. There was no abuse in that ruling.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.