**Michael CROWLEY, Plaintiff and Appellant,**

v.

**STATE of South Dakota, Defendant and Respondent.**

**No. 12339.**

Supreme Court of South Dakota.

Argued May 11, 1978.
Decided Aug. 3, 1978.

Charles A. Wolsky, Vermillion, for plaintiff and appellant.

John P. Dewell, Asst. Atty. Gen., Pierre, for defendant and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

MORGAN, Justice.

This is an appeal from the trial court's decision upholding the constitutionality of SDCL 35–2–6.1, and the denial of appellant's request for a 3.2 liquor license. We affirm the decision of the trial court.

SDCL 35–2–6.1 provides in pertinent part:

No on-sale or off-sale license shall be granted under this title to operate on the campus of any state educational institution, or within two hundred yards of the outside boundary thereof. . . .

Appellant contends that this statute is unconstitutional under both the due process and equal protection clauses of the State and Federal Constitutions in that subsequent to its enactment, the Board of Regents, on July 29, 1974, passed a rule permitting the consumption and/or storage of

3.2 beer in the personal dormitory rooms at state educational institutions. Appellant does not deny the fact that these statutes have usually been considered constitutional; however, he argues that this court is faced with a unique situation in that the subsequent action of the Board of Regents has abrogated any and all purposes of SDCL 35–2–6.1, thereby rendering it irrational and unreasonable.

When examining the validity of the statute it should be noted that every presumption is indulged in favor of the statute's validity, and a statutory discrimination will not be set aside when any state of facts may reasonably be conceived to justify it. All presumptions are in favor of the constitutionality of a statute and this continues until the contrary is shown beyond a reasonable doubt. *State v. Reininger*, 1931, 59 S.D. 336, 239 N.W. 849.

It is a general rule that no one has an absolute right to engage in the business of selling intoxicating liquor. It is a privilege subject to the police power of the state that can only be granted by the proper licensing authority. *Paron v. Shakopee*, 1948, 226 Minn. 222, 32 N.W.2d 603; see also 2 A.L.R.2d 1227. Since it is a privilege and not a fundamental right, the proper equal protection test is one of rational and reasonable basis and does not involve a suspect classification. The standard of review of this legislative classification is whether there is a rational basis existing to sustain it. *Black Hills Packing Co. v. S. D. Stockgrowers Ass'n*, 1975, D.C., 397 F.Supp. 622.

It is also the general rule that one assailing a classification in law has the burden to show that it is essentially arbitrary and clearly unreasonable. *Reininger*, supra.

Statutes regulating the selling of both intoxicating and nonintoxicating liquor within certain distances of churches or schools are fairly common. One theory which is generally advanced to support them is the protection of students in the formative period of their lives from temptations of alcoholic drink. See *Walsh v. De-partment of Alcoholic Beverage Control*, 1963, 59 Cal.2d 757, 31 Cal.Rptr. 297, 382 P.2d 337. Drawing strongly on this theory, appellant argued that there is no logical reason for protecting students from the temptations of alcohol for a radius of two hundred yards from a campus while at the same time allowing the storage and consumption of 3.2 beer in the dormitories on the campus. This argument would be persuasive if that were the only rationale. However, the other theory in support of the statutes is the removal of the atmosphere of an establishment wherein intoxicating beverages are sold to a reasonable distance because the milieu of such a place is considered inimical, which is the theory upon which the state relies. In *State ex rel. Yung Sing v. Permenter*, Fla.1952, 59 So.2d 773, 774, the Florida court stated:

> Temptation is but one of the evils toward which this type of legislation is directed. Its primary objective is to *remove the atmosphere of an establishment* wherein intoxicating beverages are sold a reasonable distance from a church, school . . . *because the milieu of such a place is considered inimical to the best interests* and welfare of those who attend church, Sunday or secular school as well as of those who are voluntarily or necessarily ensconced within the other named institutions or grounds. See also 45 Am. Jur.2d, Intoxicating Liquor, § 140. (Emphasis added.)

The state urges that the legislative intent is the milieu objective, not the protection of students from the temptation to consume liquor, for if that were the purpose the limitation would have been one mile, as in California, and not two hundred yards as in South Dakota.

Further, this theory of intent is harmonious with the regulations adopted by the Board of Regents pursuant to the implementation of their order allowing 3.2 beer on campus. Under their Majority Age Proposal Guidelines, the Board of Regents stated the following:

> (4) The intent of this policy is not to provide opportunities for large gather-

ings involving the consumption of 3.2 beer.

*Sales of alcoholic beverages prohibited*: Alcoholic beverages may not be sold in college-owned housing nor may residence hall or housing funds be used for the purchase of any alcoholic beverages.

Thus it appears that both the Board of Regents' regulations and SDCL 35–2–6.1 have the same purpose, that being to prevent the selling of liquor within close proximity of the school in order to prevent the "atmosphere of beer joints."

▇ Where the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other it would be valid, this court should adopt the construction which would uphold it. *Haas v. Independent School District No. 1 of Yankton*, 1943, 69 S.D. 303, 9 N.W.2d 707. Since the statutory discrimination will not be set aside if any stated facts reasonably may be conceived to justify it,[1] we hold that the statute is valid.

▇ The appellant also argues the unconstitutionality of the statute on due process grounds.[2] "Due process of law," when applied to substantive rights, means that the government is without the right to deprive a person of life, liberty or property by an act that has no reasonable relation to any proper governmental purpose by which it is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power.[3]

▇ This court expressed the requirements of due process in *State v. Nuss*, 1962, 79 S.D. 522, 528, 114 N.W.2d 633, 636, when it stated:

> [D]ue process still requires that any exercise of the police power be reasonable [citations omitted], and the regulatory means adopted by the legislature must bear a real and substantial relation to some actual or manifest evil [citations omitted], and cannot be unreasonable, arbitrary, or capricious.

Nor does the fact that a police regulation is valid when it is first enacted mean that it cannot become invalid through its operation if proven to be confiscatory. *Abie State Bank v. Bryan*, 1931, 282 U.S. 765, 51 S.Ct. 252, 75 L.Ed. 690. However, we hold that our disposition of the issue of equal protection is equally persuasive as to the issue of due process.

Accordingly, we affirm the judgment of the trial court.

All the Justices concur.

---

1. *Wiles v. Michigan Liquor Control Commission*, 1975, 59 Mich.App. 321, 229 N.W.2d 434.

2. S.D.Const. Art. VI, ⌐ 2; U.S.Const. Amend. 14.

3. *Farmers Educational & Coop. Union v. Circuit Court of Charles Mix County*, 1949, 73 S.D. 203, 40 N.W.2d 402.